The following is the statement of the case made up and certified by his Honor, the Judge presiding.
The defendant, with his wife, Clara Hall, were indicted for the murder of A. J. Gillespie, their step father-in-law; the indictment being found at Fall Term, 1874, and on the motion of the prisoner, continued to Spring Term, 1875. At said term, on the motion of the prisoner's counsel, there was a severance, and separate trials ordered.
The prisoner, Wm. H. Hall, being upon trial, filed an affidavit for the removal of his case; and moved the Court to order the same. His Honor refused the motion. He then filed an affidavit for continuance, on account of the absence of a material witness, one Merritt Plemons. His Honor refused to continue, but upon the affidavit ordered a capias adtestificandum to issue for the witness, Plemons, who was subsequently brought into Court, but whom the prisoner declined to examine.
The evidence was circumstantial. The deceased being shot down at his door, in the night time, from the garden fence. There was much testimony offered showing threats, motives, tracks, hidden gun, ammunition, confessions, c., many witnesses being introduced and examined. At the beginning of the trial, at the suggestion of prisoner's counsel, the witnesses were ordered out of the Court room, and separated from those being examined, and not to appear until called. *Page 135 
For the State, J. M. Alexander was examined in the course of the trial, was cross-examined and ordered to stand aside. Subsequently he was recalled by the State, to prove some fact overlooked in his first examination. After stating, that since his first examination in chief, he had been in the court room a few minutes only, his Honor allowed the examination to proceed. To this the prisoner objected, and excepted.
In the course of the argument, the prisoner's counsel read an old and a long case in the notes to Phillips' Evidence, vol. 3, an anonymous case of 1672, taken from the Gentleman's Magazine, 1762, and which details thefacts purporting to be the evidence in the case of a person, who was arraigned in the reign of Queen Elizabeth for the murder of a man, c., to the jury. The Court asked the counsel what was the object of reading that case to the jury? Counsel, in a blunt manner, replied, to comment on. His Honor then asked if he designed reading any more cases like that? The reply was, he did. There being no objection, the counsel proceeded.
When the argument was closed, the counsel for the prisoner handed to the Court the following instructions, to be read to the jury, viz:
(1.) If any of the established circumstances be wholly repugnant to the hypothesis of the State, the jury cannot convict, notwithstanding the degree and extent of the circumstances in other respects.
(2.) That circumstantial proof is not of a conclusive nature in respect to the hypothesis proposed, unless it also excludes every other inconsistent hypothesis; and when the evidence leaves a reasonable doubt as to which of several hypotheses is true, or merely establishes some probability in favor of our hypothesis, rather than another, such evidence cannot amount to proof, however great the probability might be.
(3.) It is essential that the circumstances should, to a moral certainty, actually exclude every hypothesis but the one proposed to be proved.
After stating the testimony, as delivered to the jury, his *Page 136 
Honor asked the counsel to "please read the instructions prayed for, (the writing being unintelligible,) and his Honor said: I can't read your handwriting well." The counsel did so, when the Court charged the law to be as stated, c. In the charge, and in the comments on the law, his Honor charged, that the reading of the facts in circumstantial cases, was hardly proper, but not being objected to was permitted; that it was calculated to lead the minds of the jury away from the issues and facts of the particular case before them; that they (those read) were only the recitation of facts appearing in other cases, and in which mistakes had been made, and the only service that they could be to the jury, was to make them more careful to give the prisoner the benefit of any reasonable doubt; and the more cautious to see that the prisoner was not unjustly convicted. That the facts recited had nothing to do with the testimony deposed to in this case; that each and every case must be decided on its own merits, and according to the evidence, and that without any reference to the mistakes made in other cases. That life was full of error, and every thing human was liable to mistakes; and that the most correct thing we could do, was to act as best we could under the circumstances, having due and conscientious regard to the position we occupy, and the oath we had taken; and that after giving the prisoner the benefit of the reasonable doubt, and after a fair and a just consideration of all the circumstances, if they were fully satisfied, that he had killed Gillespie in the way and manner stated, it was their duty to bring in a verdict of "guilty."
Further, his Honor stated that the trial having occupied a long time, (five days,) he would for the benefit of the jury, sum up the testimony as delivered, and lay before them the theories and arguments of both sides — of the State and of the prisoners.
This his Honor proceeded to do, and asked, after getting through, if any thing had been overlooked, or not sufficiently and intelligibly stated. The counsel for the prisoner suggested that the line of argument in the prisoner's behalf had not been *Page 137 
so stated as to give him the full benefit of its reasoning and effect of the evidence, c., and suggesting other propositions and arguments used by the defence; the same was fully recited by the Court and commented on. Again, his Honor asking if any thing, for or against the prisoner, had been overlooked in the charge of the Court, and both the State and the prisoner replying that there was not, submitted the case to the jury, again impressing upon them, the right of the prisoner to all reasonable doubts as to his guilt, c.
The jury found a verdict of guilty. Motion for a new trial. Motion overruled. Judgment and appeal by the prisoner.
The only point made for the prisoner at this bar, was, whether his Honor below ought to have removed the case upon the affidavit filed.
The case of State v. Hill, et al., 72 N.C. 345, is an express authority that the matter of removal of causes is under the discretion of the Judge presiding. The naked removal, or refusal to remove, nothing more appearing, is not appealable. We are not prepared to say that circumstances might not accompany a refusal to remove which might make it appealable, — as if, for instance, the presiding Judge should refuse on account of a supposed want of power, and so there may be other instances; but here nothing appears to show that the decision was influenced by any thing but the legitimate discretion of his Honor.
There is no error in the record. "Let this be certified together with this opinion, to the end that there may be judgment and execution according to law.
PER CURIAM. Judgment affirmed. *Page 138